UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORIGINAL

---------------------------------------------------------------------- x

BRUCE TREZEVANT,

Plaintiff,

CV 10 0475

-against-

**COMPLAINT**

THE CITY OF NEW YORK, DETECTIVE ALBERT JACKSON, shield # 3573, DETECTIVE CHARLES STEWART, shield # 2387,

Jury Trial Demanded

Defendants.

---------------------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ FEB 03 2010 ★
BROOKLYN OFFICE

COGAN, J.

**PRELIMINARY STATEMENT**

1. This is an action alleging violations of 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the Constitution committed by the City of New York and two New York City Police Detectives employed in the Brooklyn South Narcotics Division ("BSND"). Plaintiff alleges that, on July 16, 2009, Detectives Albert Jackson and Charles Stewart falsely arrested him, used excessive force on him, and caused false allegations about him to be presented to the Kings County District Attorney's Office. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the court deems just and proper.

**JURISDICTION & VENUE**

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

4. Bruce Trezevant is a New York resident who lives in Kings County.

5. The City of New York is a municipal corporation organized under the laws of the State of New York.

6. Detectives Albert Jackson and Charles Stewart are New York City Police Detectives assigned to the BSND who were acting under color of state law and in their capacities as BSND detectives at all relevant times. The detectives are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The detectives are sued in their individual capacities.

## STATEMENT OF FACTS

7. On July 16, 2009, at approximately 11:00 a.m., plaintiff was standing in front of a department store, located at 2706 Mermaid Avenue in the Coney Island section of Brooklyn, speaking with his friend Jamal Furr.

8. At all relevant times, plaintiff was obeying the law.

9. Although plaintiff had not committed a crime and was not acting in a suspicious manner, Detectives Albert Jackson and Charles Stewart of the BSND pulled up in an unmarked car and seized plaintiff and Furr.

10. Detective Jackson stated to plaintiff: "What are you doing talking to him?"

11. Plaintiff responded that was Furr was a friend.

12. Detective Jackson ordered plaintiff to produce identification and then both detectives searched plaintiff without consent or legal justification.

13. The detectives did not find anything illegal on plaintiff.

14. After the search, one of the detectives handcuffed plaintiff excessively tight causing plaintiff to suffer pain, numbness, and bruising.

15. Plaintiff asked both detectives to loosen the tight cuffs but was told to "shut up."

16. A short time later, a police van arrived at the scene and plaintiff and Furr were placed in the rear of the van.

17. The tightly handcuffed plaintiff was driven around Brooklyn for some time while BSND detectives and officers searched for additional people to arrest.

18. Eventually, plaintiff and Furr were taken to the 60th Precinct.

19. Plaintiff asked several times what he was being charged with but none of the BSND detectives or officers gave him an answer.

20. While plaintiff was incarcerated in a cell in the 60th Precinct, Detectives Jackson and Stewart misrepresented to BSND Detective Anzelmo Giovanniello, who was plaintiff's designated "arresting officer," that they had found a glass pipe with crack residue on plaintiff.

21. Detective Giovanniello completed arrest reports charging plaintiff with possession of a controlled substance, a class "A" misdemeanor, punishable by up to one year in jail.

22. While plaintiff was held in the precinct, no one provided him with food or water.

23. In the evening, plaintiff was taken to Brooklyn Central Booking.

24. While being admitted into Brooklyn Central Booking, unidentified officers illegally strip searched plaintiff down to his underwear in front of other detainees.

25. Plaintiff was held in several cells in Brooklyn Central Booking, all of which were severely overcrowded, infested with roaches, and filled with garbage and human excrement.

26. There were no beds or mats in Brooklyn Central Booking for plaintiff to sleep on.

27. The toilet in Brooklyn Central Booking was covered with urine, feces, and vomit.

28. While plaintiff was confined in Brooklyn Central Booking, plaintiff's designated "arresting officer," Detective Giovanniello, told the Kings County District Attorney's Office that Detectives Jackson and Stewart had found a glass pipe with crack residue on plaintiff.

29. During the afternoon of July 17, 2009, plaintiff was arraigned in Criminal Court and released on his own recognizance.

30. On January 28, 2010, the criminal charge was adjourned in contemplation of dismissal.

31. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty for over 24 hours and suffered emotional distress, mental anguish, fear, anxiety, embarrassment, and humiliation.

## FIRST CLAIM

## (FALSE ARREST)

32. Plaintiff repeats the foregoing allegations.

33. No police officer observed plaintiff commit a crime on July 16, 2009.

34. At no time on July 16, 2009 did plaintiff possess a glass pipe with cocaine residue.

45. The City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

46. Upon information and belief, the City of New York, at all relevant times, was aware that Detectives Jackson and Stewart are unfit detectives who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

47. Detective Jackson was sued for civil rights violations in *Tashia Carter v. City of New York, et al.*, 07 CV 3769 (E.D.N.Y.), which settled in June 2008, and in *Paul Gosling v. City of New York, et al.*, 09 CV 3778 (E.D.N.Y.), which settled in January 2010.

48. Detective Stewart was sued for civil rights violations in *Yamahi Hagarth v. City of New York, et al.*, 05 CV 4850 (E.D.N.Y.), which settled in September 2006, and in *Paul Gosling v. City of New York, et al.*, 09 CV 3778 (E.D.N.Y.), which settled in January 2010.

49. Despite the above, the City of New York exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline, and monitor the detectives and improperly retained and utilized them. Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the detectives.

50. In addition to the above, the following are City policies, practices and customs:

(a) arresting innocent individuals, primarily minorities, on the pretext that they trespassed, possessed or sold drugs, or possessed weapons, in order to meet productivity goals;

(b) fabricating evidence against individuals;

(c) using excessive force on individuals;

(d) unlawfully strip searching pre-arraignment detainees;

(e) retaliating against individuals who engage in free speech.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Attorney's fees and costs;

d. Such other and further relief as the court deems just and proper.

DATED: February 3, 2010

RICHARD J. CARDINALE
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-9391